[Cite as *State ex rel. Yutzy v. Yutzy Ent. Servs., Inc.*, 2014-Ohio-2497.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Mark Yutzy, | : | |
| Relator, | : | |
| v. | : | No. 13AP-489 |
| Yutzy Enterprise Services, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 10, 2014

*Michael J. Muldoon*, for relator.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Mark Yutzy, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its May 16, 2013 order that denied relator's application for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that there was some evidence supporting the commission's decision that the allowed physical and

psychological claims did not prelude relator from performing sedentary work.  With respect to the non-medical disability factors, the magistrate found that the commission did not abuse its discretion in evaluating the vocational evidence and in concluding that relator was capable of sustained remunerative employment.  Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3}   Relator has filed an objection to the magistrate's decision.  Relator argues that the commission abused its discretion in assessing the non-medical vocational factors because it failed to mention or discuss the vocational report of Ms. Williams, who opined that relator was unfit for work.  Relator also points out that his rehabilitation file was closed because of his lack of "positional tolerances," "functional abilities," and "below sedentary physical demand capacity level."  Therefore, relator contends the magistrate erred when he found that the commission did not abuse its discretion.  We disagree.

{¶ 4}   As noted by the magistrate, because the commission is the expert on non-medical vocational issues, it need not rely on offered vocational evidence.  Nor does the commission need to enumerate the evidence it considered.  The law presumes that the commission considered all the evidence before it.  *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 252 (1996).  Here, the commission clearly set forth its vocational analysis and it was not required to address Ms. Williams' report because it did not rely that report.  The commission did not abuse its discretion by conducting its own analysis of the non-medical disability factors.  For these reasons, we overrule relator's objection.

{¶ 5}   Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

CONNOR and O'GRADY, JJ., concur.

_____

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Mark Yutzy, | : | |
| Relator, | : | |
| v. | : | No. 13AP-489 |
| Yutzy Enterprise Services, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on January 30, 2014

*Michael J. Muldoon*, for relator.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 6}  In this original action, relator, Mark Yutzy, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the May 16, 2013 order of its staff hearing officer ("SHO") that denies relator's application for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 7}  1. On September 12, 2006, relator sustained an industrial injury while employed with Yutzy Enterprise Services, Inc. ("Yutzy Enterprise"), a company that

relator owned.  Yutzy Enterprise was involved in the sales, service and installation of heating, ventilation and air conditioning ("HVAC") equipment.

{¶ 8}  2. The industrial claim (No. 06-892110) is allowed for:

> Aggravation of pre-existing lumbar spinal stenosis; degenerative disc disease at L2, L3 and L4; depressive disorder.

{¶ 9}  3. On November 5, 2012, relator was treated by his treating psychologist Michael G. Drown, Ph.D.  Dr. Drown issued a two-page narrative report concluding:

> Based on all of the available information it is reasonable that Mr. Yutzy's work related psychiatric condition, "Depressive Disorder (311.)", renders him to be permanently and totally disabled. In reference to the AMA Guide (Fourth Edition) regarding mental and Behavioral Disorders, his psychiatric impairment falls within the marked range.

{¶ 10} 4. On November 30, 2012, relator filed an application for PTD compensation.  In support, relator submitted the report of Dr. Drown.

{¶ 11} 5. The PTD application form asks the applicant to provide information regarding his education status.  Relator indicated that he graduated from high school in 1969.  The application form also posed three questions:  (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?"  Given a choice of "yes," "no" and "not well," relator selected the "not well" response for the first two queries.  He selected the "yes" response for the third query.

{¶ 12} 6. The PTD application form asks the applicant to provide information regarding his work history.  Relator indicated that he was the "owner" of an "HVAC Service" from December 1979 to September 2006.  Prior to that, he was a self-employed carpenter from May 1972 to November 1979.

{¶ 13} 7. On February 13, 2013, at the commission's request, relator was examined by orthopedist William Reynolds, M.D.   In his five-page narrative report dated February 28, 2013, Dr. Reynolds opined:

> With this impairment of function as relates to his spine, he is capable of sedentary activities. In that capacity, he should avoid those activities that require repeated bending and lifting.

* * *

He has a whole person impairment of function of the person
as a whole of 23%.

* * *

In my opinion, he is capable of some varied work activities,
and should avoid repeating [sic] bending and lifting.

{¶ 14} 8. On March 1, 2013, Dr. Reynolds completed a Physical Strength Rating form. On the form, Dr. Reynolds indicated by his mark that relator is capable of sedentary work.

{¶ 15} 9. On February 13, 2013, at the commission's request, relator was examined by psychologist Bruce J. Goldsmith, Ph.D. In his six-page narrative report, Dr. Goldsmith opined:

[T]he degree of permanent impairment from his allowed conditions of Depressive Disorder resulting from his industrial accident of 09/12/2006 and referenced by the AMA Guide to Permanent Impairment (2nd and 5th editions), is presently estimated at Class II/Mild, 15%.

* * *

The degree of psychological impairment due to his industrial accident of 09/12/2006 would limit him to simple to moderately complex, low to moderate stress work.

{¶ 16} 10. On February 18, 2013, Dr. Goldsmith completed a form captioned "Occupational Activity Assessment[,] Mental & Behavioral Examination." On the form, Dr. Goldsmith indicated by his mark: "This Injured Worker is capable of work with the limitation (s) / modification (s) noted below."

{¶ 17} In the space provided, in his own hand, Dr. Goldsmith wrote: "This injured worker is limited to simple to moderately complex, low to moderate stress work."

{¶ 18} 11. At relator's request, vocational consultant Molly S. Williams prepared a vocational report. In her three-page report dated March 31, 2013, Williams concluded:

[W]hen all of the disability factors are correctly identified, stated, and considered: an individual unable to perform his customary past relevant work as an Owner, both as he performed it and as it is normally performed within the

national economy; an individual of advanced age (age fifty-five or over); an individual with a high school education completed in the remote past (1969); an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon the allowed physical conditions as assessed by The Industrial Commission's Specialist, William Reynolds, M.D., and the allowed mental condition as assessed by the Treating Psychologist, Michael G. Drown, it is obvious that the claimant is permanently and totally disabled.

{¶ 19} 12. On May 16, 2013, relator's PTD application was heard by an SHO. The hearing was recorded and transcribed for the record.

{¶ 20} 13. Following the hearing, the SHO issued an order denying the PTD application. The SHO's order explains:

The Staff Hearing Officer has reviewed and considered all relevant evidence on file, as well as that presented at hearing, and bases this decision on the evidence and reasons specifically cited in the following findings.

The Injured Worker is a 61 year old male with a high school education, and a work history including experience as a dump truck driver, laborer, carpenter, and a heating, ventilation, and air conditioning (HVAC) business owner. The Injured Worker was injured on 09/12/2006, when he slipped on some cardboard and fell on his low back. On 11/07/2006, the Injured Worker underwent a post lateral fusion procedure at L2-L3, L3-L4; lumbar laminectomy with decompression of facetectomy L2, L3, and L4. Currently, the Injured Worker's medical treatment is conservative. The Injured Worker sees his physician Dr. Altic every four months, Dr. Perkins (a pain management specialist) every three months for medication monitoring, and Dr. Drown every three weeks for psychotherapy. The Injured Worker does take medication for the allowed psychological condition in the claim. According to his IC-2 Application the Injured Worker last worked on 09/19/2006. The Injured Worker has been receiving Social Security Disability Benefits in the amount of $1,679.00 per month since 2007.

The Injured Worker was examined by Industrial Commission Specialist William Reynolds, M.D., on 02/13/2013 with regard to the allowed physical conditions in the claim. Dr. Reynolds opined that the allowed physical conditions in the claim have reached maximum medical

improvement. In addition, Dr. Reynolds opined that as a result of the allowed physical conditions the Injured Worker has a 23% whole person impairment. Finally, Dr. Reynolds opined that when considering the allowed physical conditions in the claim, the Injured Worker is capable of performing sedentary work activity. Specifically, Dr. Reynolds opined "With this impairment of function as it relates to his spine, he is capable of sedentary activities. In that capacity he should avoid those activities that require repeated bending or lifting."

The Injured Worker was examined by Industrial Commission Specialist Bruce J. Goldsmith, Ph.D., on 02/13/2013, with regard to the allowed psychological condition in the claim. Dr. Goldsmith opined that the allowed psychological condition in the claim has reached maximum medical improvement. In addition, Dr. Goldsmith opined that as a result of the allowed psychological condition the Injured Worker has a 15% whole person impairment. Finally, Dr. Goldsmith opined that the Injured Worker is capable of work activity with some restrictions. Dr. Goldsmith opined "This injured worker is limited to simple to moderately complex low to moderate stress work."

The Staff Hearing Officer relies upon the medical reports of Dr. Reynolds and Dr. Goldsmith to find that when only the impairment arising from the allowed conditions of the claim is considered, the Injured Worker has the residual functional capacity to perform sedentary work activity. Furthermore, when his degree of impairment is considered in conjunction with his non-medical disability factors, the Staff Hearing Officer finds that the Injured Worker is capable of sustained remunerative employment and is not permanently and totally disabled.

The Staff Hearing Officer considers the Injured Worker's age to be a neutral vocational asset with regard to his potential for returning to the workforce. The Injured Worker's age in and of itself would not preclude him from obtaining and performing work activity. Individuals of the Injured Worker's age can continue to work for many years even after receiving Social Security Retirement Benefits. In addition, individuals of the Injured Worker's age have sufficient time to acquire new job skills, at least through informal means such as short-term or on-the-job training, that could enhance their potential for re-employment.

The Staff Hearing Officer views the Injured Worker's high school education and his specialized training in HVAC (received an Ohio license for this work based upon a required test) to be a positive vocational asset with regard to his potential for returning to the workforce. The Injured Worker indicated on his IC-2 Application that he is able to do basic math, but cannot read or write well. When questioned about his inability to read or write well the Injured Worker testified that he received average grades (C to C+) in high school. However, the Staff Hearing Officer notes for the record that despite the Injured Worker's position that he cannot read or write well, the Staff Hearing Officer finds that the Injured Worker was able to run a successful HVAC company for some 27 years. In addition, the Staff Hearing Officer finds the Injured Worker's former positions of employment (carpenter and HVAC business owner) to be at least at the semi-skilled level. As such, the Staff Hearing Officer finds that the Injured Worker has sufficient education, intellect, and literacy abilities to obtain and perform work activity at the levels described by Dr. Reynolds and Dr. Goldsmith in their reports.

The Staff Hearing Officer finds that Injured Worker's work experience to be a strong vocational asset regarding his potential for returning to the work force. The Injured Worker has a work history including experience as a dump truck operator, laborer, carpenter, and small business owner operating a HVAC company. The Injured Worker has a very long and consistent 37 year work history. The Staff Hearing Officer finds that the Injured Worker's ability to successfully operate his own HVAC business for 27 years establishes that the Injured Worker developed a wide variety of transferable skills including communication skills, business skills including drafting of contracts and estimates, meeting with customers, and selling services and equipment, and technical skills including the ability to install, service, and maintain HVAC systems. The Staff Hearing Officer finds that these transferable skills would greatly assist the Injured Worker in obtaining and performing work activity at the levels described by Dr. Reynolds and Dr. Goldsmith in their reports.

Therefore, because the Injured Worker has the residual functional capacity to perform sedentary work activity when only the impairment arising from the allowed conditions of the claim is considered, because he is qualified by age, education and a semi-skilled work history to obtain and

> perform work at that level, and because he has the capacity to acquire new job skills, at least through informal means, the Staff Hearing Officer finds that the Injured Worker is capable of performing sustained remunerative employment and is not permanently and totally disabled. Accordingly, the IC-2 Application filed 11/30/2012, is denied.

{¶ 21} 14. On June 7, 2013, relator, Mark Yutzy, filed this mandamus action.

Conclusions of Law:

{¶ 22} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 23} For its determination of residual functional capacity, the commission, through its SHO, relied upon the reports of Drs. Reynolds and Goldsmith.

{¶ 24} Examining only for the allowed physical conditions of the industrial claim, Dr. Reynolds opined that relator is capable of performing sedentary work but, in that capacity, he should avoid those activities that require repeated bending or lifting. Dr. Goldsmith opined that the allowed psychological condition permits work activity with some restrictions. Dr. Goldsmith stated: "This injured worker is limited to simple to moderately complex low to moderate stress work." Here, relator does not challenge the commission's reliance upon the reports of Drs. Reynolds and Goldsmith, nor does relator challenge the commission's determination of residual functional capacity.

{¶ 25} However, relator does challenge the commission's consideration of the non-medical disability factors.

{¶ 26} The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission is the expert on this issue. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 271 (1997). The commission need only cite to the evidence upon which it relied. *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 252 (1996). The commission need not enumerate the evidence it considered. *Id.* Because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings gives rise to a second presumption—that the commission indeed considered all the evidence before it. *Id.*

{¶ 27} Here, the SHO's order of May 16, 2013 does not mention the Williams vocational report because, presumably, the commission placed no reliance upon the report.  Here, the commission conducted its own analysis of the non-medical disability factors.  It was not an abuse of discretion for the commission to conduct its own analysis of the non-medical disability factors.  It was not an abuse of discretion for the commission to not mention or address the Williams report in its order.  The commission need not explain why it rejected the Williams report.

{¶ 28} Here, relator asserts that the SHO "ignored the probative vocational evidence which was submitted [by relator] in this case."  (Relator's brief, 10.)  Relator then asserts "[o]bviously, the Staff Hearing Officer was required to rely upon the probative vocational evidence before him."  (Relator's brief, 11.)  Relator is incorrect.

{¶ 29} Because the commission did not rely upon the Williams vocational report, it necessarily rejected the report as not being probative.  It is the commission that determines the weight and credibility of the evidence before it.  It is therefore incorrect for relator to assert that the Williams report is "probative."  It is also incorrect for relator to assert that the commission "ignored" the Williams report simply because it chose not to rely upon it.

{¶ 30} For all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
KENNETH W. MACKE

NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).